***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, and having reviewed the competent evidence of record, the Full Commission hereby AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as a matter of law the following, which were submitted at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The May 2, 1997 Compromise Settlement Agreement entered into by the parties in this claim was stipulated into evidence.
2. The June 23, 1997 Order approving Compromise Settlement Agreement executed by Commissioner Dianne Sellers was stipulated into evidence.
3. The following exhibits were entered into the evidence of record at the hearing before the Deputy Commissioner:
a. Plaintiff's Exhibit 1 — Dr. Manning's Report dated February 6, 1997
b. Plaintiff's Exhibit 2 — letter dated November 25, 1998
c. Defendants' Exhibit 1 — medical records
d. Defendants' Exhibit 2 — medical records
e. Defendants' Exhibit 3 — clincher agreement
4. The deposition of William Stephenson is a part of the evidence of record.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On September 24, 1994, an employee-employer relationship existed between employee-plaintiff and employer-defendant.
3. At the time of plaintiff's injury by accident on September 24, 1994, defendants were insured for workers' compensation claims by Aetna/Travelers Insurance Company.
4. On September 24, 1994, plaintiff was employed by defendants as a nurse. On that date, plaintiff suffered an injury by accident arising out of and in the course of employment when she fell.
5. At the time of her September 24, 1994 injury, plaintiff's average weekly wage was $408.03, resulting in a compensation rate of $272.03 per week.
6. On October 24, 1994, the parties entered into a Form 21 Agreement for Compensation for Disability. This Form 21 Agreement was approved by the North Carolina Industrial Commission on January 25, 1995.
7. Following a course of medical treatment for her injuries of September 24, 1994, defendants assigned vocational rehabilitation to assist plaintiff in returning to work.
8. On December 4, 1996 defendants filed a Motion to Compel Plaintiff to Participate in Vocational Rehabilitation with the Industrial Commission.
9. On December 5, 1996, an Order was entered by Executive Secretary Tracey Weaver, which ordered plaintiff to participate fully in all vocational rehabilitation efforts.
10. On March 5, 1997, defendants filed a Form 24 Application to Terminate or Suspend Payment of Compensation based upon plaintiff's continued refusal to cooperate with vocational rehabilitation and medical treatment.
11. On March 19, 1997, the parties were ordered to participate in a mediated settlement conference with William Stephenson serving as mediator.
12. A mediation was held in this claim on May 2, 1997. On that date, Mr. Stephenson completed a Report of Mediator indicating that the parties had reached an agreement on all issues.
13. On or about May 2, 1997, the parties submitted a fully executed Compromise Settlement Agreement to the Commission for consideration and approval.
14. On June 23, 1997, Commissioner Dianne Sellers issued an Order Approving the Compromise Settlement Agreement. In this Order, Commissioner Sellers indicated that compliance with the terms of the Agreement discharged defendants from further liability under the Workers' Compensation Act by reason of the injury giving rise to this claim. Defendants paid plaintiff all benefits owed pursuant to the terms of the Compromise Settlement Agreement and Order. None of the parties filed an appeal from Commissioner Sellers' June 23, 1997 Order Approving the Compromise Settlement Agreement.
15. On or about February 4, 1998, plaintiff filed a Form 33 Request that Claim be Assigned for Hearing with the Industrial Commission. In this Form 33 plaintiff alleged that defendants had withheld medical evidence from plaintiff, and therefore, plaintiff requested that the May 2, 1997 Compromise Settlement Agreement be set aside.
16. On or about June 24, 1998, defendants filed a Form 33R, Response to Hearing Request, contending that there was no basis to set aside the Compromise Settlement Agreement and requesting attorney fees for defense of the claim.
17. At the hearing before the Deputy Commissioner, plaintiff testified that despite attempts to obtain a copy of Dr. Alexander Manning's office notes of February 6, 1997, she had not received a copy of the report.
18. Plaintiff further testified that while an agreement was reached at mediation, when she signed the agreement she had still not received the requested medical records. Plaintiff further testified that when she left the mediation, she was a "basket case".
19. Plaintiff acknowledged at the hearing before the Deputy Commissioner that there was a dispute among her healthcare providers as to whether she was malingering.
20. Anthony Hartsoe, former attorney for defendants in this claim, testified that prior to the mediation, Mr. Stephenson explained the process of mediation in detail. Mr. Hartsoe also testified that during the mediation, plaintiff argued that she was going to need medical treatment for the remainder of her life, that she did not believe she would ever be capable of returning to work, and that she wanted to continue her medical treatment.
21. Mr. Hartsoe also testified that during the mediation, plaintiff was able to recite, from memory, the chronological order of her medical treatment, including when she saw certain doctors. Mr. Hartsoe further testified that plaintiff used this chronology at mediation to support her position.
22. Mr. Hartsoe testified that during the mediation, plaintiff indicated that she did not have all of the medical records, specifically Dr. Manning's report of February 6, 1997. According to Mr. Hartsoe, Dr. Manning's report was the last medical record generated in the case prior to the mediation and he believed that he had sent all medical reports to plaintiff. Mr. Hartsoe testified that he stopped the mediation and personally made a copy of Dr. Manning's report which he provided to plaintiff before resuming the mediation. According to Mr. Hartsoe, this exchange occurred during the first ten minutes of the mediation.
23. Mr. Hartsoe also testified that at the mediation he referred to Dr. Manning's medical report during his opening statement and that plaintiff had a copy of Dr. Manning's report in front of her while this occurred.
24. Mr. Hartsoe testified that at no point during the mediation did he advise plaintiff that she did not need additional medical treatment.
25. Mr. Hartsoe further testified that, after the claim had settled, he drafted the Compromise Settlement Agreement that same day, at plaintiff's request. Plaintiff returned to the office where Mr. Hartsoe allowed her to read the Compromise Settlement Agreement on her own. According to Mr. Hartsoe, plaintiff requested changes to the language of the Agreement, and these changes were made by his office.
26. Mr. Hartsoe also testified that he went through the Agreement with plaintiff and that he explained to plaintiff that if she signed the Compromise Settlement Agreement, she was waiving her rights under the Workers' Compensation Act to collect additional benefits. Mr. Hartsoe testified that plaintiff acknowledged her understanding of this fact. Mr. Hartsoe testified that he goes through this process of explaining the terms of Compromise Settlement Agreements with every plaintiff unrepresented by counsel.
27. Mr. Stephenson testified that he was the mediator at the mediation of the claim between the parties on May 2, 1997 in Winston-Salem.
28. Mr. Stephenson stated that plaintiff was not represented by counsel at the mediation and that he discussed this fact, and the process of mediation, with her. Plaintiff advised Mr. Stephenson that she did not want to retain an attorney to represent her.
29. Mr. Stephenson testified that plaintiff brought a black binder with her to the mediation and that this binder contained plaintiff's medical reports. Plaintiff referred to these medical reports during the mediation.
30. Mr. Stephenson testified that during the mediation, an adjournment was taken for a few minutes so that Mr. Hartsoe could provide plaintiff with a copy of a medical report which plaintiff said she had not received. According to Mr. Stephenson, a copy of this medical report was provided to plaintiff, and she had the medical report when the parties separated following the opening statements.
31. Mr. Stephenson recalled that during the mediation, plaintiff was very organized and extremely articulate. Mr. Stephenson also indicated that plaintiff appeared to have a distrust of defendants and Mr. Hartsoe.
32. Mr. Stephenson testified that, during the mediation's break-out sessions, plaintiff handled herself very well, that she was articulate, and that she referred to her medical records throughout the mediation. Mr. Stephenson also testified that after approximately three hours, the parties agreed to resolve their workers' compensation claim.
33. Mr. Stephenson stated his opinion that, the settlement was voluntary and that plaintiff had not been coerced into signing the Compromise Settlement Agreement or into agreeing to settle her case. Mr. Stephenson also believed that plaintiff was competent to settle her workers' compensation claim and that if he had not felt this way, he would have stopped the mediation and advised her not to proceed without counsel.
34. Mr. Stephenson did not notice any lapse in plaintiff's thinking process or in her ability to make deductive-reasoning connections.
35. The competent evidence of record in this case indicates that plaintiff was mentally competent to participate in the mediation without counsel and to resolve her workers' compensation claim by entering into a Compromise Settlement Agreement on May 2, 1997. Plaintiff failed to produce any evidence that any doctor has ever advised that she is incompetent. Plaintiff has never been adjudicated to be incompetent to handle her own affairs.
36. The Full Commission finds based upon the greater weight of the credible, competent evidence of record that the Compromise Settlement Agreement entered into by the parties in this case on May 2, 1997 was not procured by the fraud, misrepresentation, or undue influence of the defendants or their representative. The settlement was not based on mutual mistake involving the parties.
 ***********
Based upon the foregoing Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order for a party to set aside a Compromise Settlement Agreement, the party has the burden of proving, to the satisfaction of the Commission, that there has been error due to fraud, misrepresentation, undue influence, or mutual mistake. N.C. Gen. Stat. § 97-17; see also Glenn v. McDonald's,109 N.C. App. 45, 425 S.E.2d 727 (1993). A settlement agreement may be overturned only in cases where there is evidence that the agreement was obtained by fraud, misrepresentation, mutual mistake or undue influence. N.C. Gen. Stat. § 97-17.
2. In the present case, plaintiff has failed to show that the Compromise Settlement Agreement entered into by the parties on May 2, 1997 was procured by fraud, misrepresentation, undue influence, or mutual mistake and therefore the Compromise Settlement Agreement shall not be set aside. N.C. Gen. Stat. §97-17.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Plaintiff's claim to set aside the Compromise Settlement Agreement dated May 2, 1997 is hereby DENIED.
2. Each side shall pay its own costs.
This the 7th day of October, 2004.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER
LKM/mlb